IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROSE MARY G., § | | |
| PLAINTIFF, § | | |
| § | | |
| V. § | CASE NO. 3:19-CV-2067-G-BK | |
| § | | |
| COMMISSIONER OF THE SOCIAL § | | |
| SECURITY ADMINISTRATION, § | | |
| DEFENDANT. § | | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff seeks judicial review of the Commissioner's final decision denying her claim for disability insurance benefits under Title II of the Social Security Act (the "Act"). Pursuant to 28 U.S.C. § 636 and *Special Order 3*, the parties' cross-motions for summary judgment are before the Court for findings and a recommended disposition. Doc 10; Doc. 12. For the reasons that follow, Plaintiff's *Motion for Summary Judgment* should be **DENIED**, Defendant's *Motion for Summary Judgment* should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

## I. BACKGROUND

Plaintiff was 49 years old on the date of the administrative law judge's ("ALJ") decision and had attended college for at least one year. Doc. 7-1 at 180, 200; Doc. 7-1 at 757. She has past relevant work experience as a custodian, cashier/invoicer, and paralegal/legal assistant. Doc. 7-1 at 201, 280-282. Plaintiff alleges that she became disabled in April 2016. Doc. 7-1 at 180.

In terms of her medical history, Plaintiff has been diagnosed with degenerative disc disease of the lumbar spine, mild degenerative joint disease of the right knee, hypertension, and anemia.  Doc. 7-1 at 413, 420, 431.  In September 2016, an MRI of Plaintiff's lumbosacral spine revealed grade I retrolisthesis at L1-L2 and L3-L4, mild degenerative spondylosis at L1-L2, and moderate degenerative facet hypertrophy from L1-L2 through L5-S1.  Doc. 7-1 at 412.  Plaintiff also has been diagnosed with major depressive disorder. Doc. 7-1 at 393; Doc. 7-1 at 682.

Upon the referral of Plaintiff's physician, Dr. Katrina Belen, Psy.D, conducted a neuropsychological exam in May 2017.  Dr. Belen diagnosed Plaintiff with (1) major depressive disorder, recurrent episode, severe with possible psychotic features; (2) generalized anxiety disorder; (3) chronic pain; (4) unspecified insomnia disorder; (5) somatic symptom disorder; and (5) mild neurocognitive disorder due to multiple etiologies.  Doc. 7-1 at 757.  Dr. Belen stated that a "severe level of depression and anxiety [was] expected to interfere with cognitive performance, particularly sustained attention."  Doc. 7-1 at 757.

In August 2017, Plaintiff participated in a 15-day outpatient program at Medical City Green Oaks Hospital, where she was diagnosed with major depressive disorder, recurrent severe, without psychotic features.  Doc. 7-1 at 811.  She was discharged home "in an improved and stable state" with medications and a recommendation to follow up with psychotherapy.  Doc. 7-1 at 811-12.

**B.  The ALJ's Findings**

In an October 2018 decision, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, degenerative joint disease of the knee, obesity, major depressive disorder, generalized anxiety disorder, and substance abuse, but did not have an impairment or

2

combination of impairments that met or medically equaled the criteria of a Listing in the applicable regulations. Doc. 7-1 at 23-24. The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to (1) perform a limited range of light work; (2) understand, remember and carry out simple instructions; and (3) occasionally have contact with coworkers, supervisors, and the public. Doc. 7-1 at 25. In conclusion, the ALJ found that while Plaintiff could not perform her past relevant work, she could perform other jobs available in the national economy and, thus, was not disabled within the meaning of the Act. Doc. 7-1 at 30-32.

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing

4

to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

## III. ANALYSIS

### A. Whether the RFC is Supported by Substantial Evidence

Plaintiff argues that, as to her mental health issues, the ALJ summarized the medical facts in an incomplete and sometimes misleading or inaccurate manner, which led to an unsupported RFC finding.[1]  Doc. 10 at 6-9.  Plaintiff asserts that these errors resulted in the ALJ limiting her to "simple tasks," which is not supported by the medical records diagnosing her with attention and concentration deficits, distractibility, and problems with complex attention.  Doc. 10 at 6-7. Plaintiff makes a similar argument with respect to the ALJ's physical RFC assessment, which she claims does not accurately and fully describe her limited range of motion and complaints of pain.  Doc. 10 at 7-8.

Defendant responds that even if Plaintiff's allegations are correct, she has not explained how they undermine the ALJ's decision.  Doc. 12-1 at 2-3.  Defendant also argues that an ALJ is not required to discuss every piece of evidence in the record.  Doc. 12-1 at 3.  With regard to the ALJ's mental health RFC determination, Defendant contends that the medical evidence demonstrates that Plaintiff typically had normal mental status examinations, and the ALJ adequately accounted for Plaintiff's limitation in concentration by restricting her to simple tasks. Doc. 12-1 at 4.  Finally, Defendant asserts that the ALJ's physical RFC assessment is supported

---

[1] In a related argument, Plaintiff contends that the ALJ cited to records that are unrelated to the proposition stated and sometimes cited to non-existent evidence, making it "unduly difficult" to review the decision.  Doc. 10 at 10-11.  For the reasons stated *infra* the Court finds that, irrespective of any such errors, substantial evidence supports the ALJ's decision.

5

because Plaintiff's pain level fluctuated, but was generally well-controlled with medication and injections.  Doc. 12-1 at 4-5.

Here, even if the ALJ made every error Plaintiff directs the Court to, her argument fails. Ultimately, Plaintiff must show that she is so functionally impaired that she is precluded from engaging in substantial gainful activity.  *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (citing *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983)).  A finding that there is not substantial evidence to support an ALJ's decision "is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

Plaintiff's asserted cognitive difficulties lie in paying attention during complex tasks and sustaining attention over time.  Doc. 7-1 at 758.  However, Dr. Belen observed that on some tasks, Plaintiff maintained attention and managed her time well, displayed good information management and thought organization, and had only a mild level of cognitive impairment overall.  Doc. 7-1 at 759, 761.  Dr. Belen also noted that Plaintiff's difficulties with maintaining attention were mitigated by increasing her level of task engagement and through cueing.  Doc 7-1 at 761.  This and other substantial medical evidence of record support the ALJ's finding that Plaintiff maintained the ability to perform "simple tasks."  *See* Doc. 7-1 at 680 (denying decreased attention to detail, forgetfulness, and decreased sustained effort); Doc. 7-1 at 838 (noting improved concentration and motivation); Doc. 7-1 at 874 (denying problems with concentration); *Bordelon v. Astrue*, 281 Fed. App'x 418, 422-23 (5th Cir. 2008) (per curiam) (holding that ALJ's RFC assessment reasonably incorporated claimant's moderate limitation in concentration, persistence, and pace by restricting him to, *inter alia*, one-to-two step

6

instructions); *Gipson v. Astrue*, No. 10-CV-1413-BK, 2011 WL 540299, at *6-7 (N.D. Tex. Feb. 11, 2011) (Toliver, J.) (finding that ALJ reasonably incorporated claimant's limitations in concentration, persistence and pace and her limited ability to work with others by instructing vocational expert that claimant was only able to perform "simple work in which interaction with the public and co-workers is no more than incidental.").

For similar reasons, Plaintiff's argument regarding the ALJ's consideration of her pain fails. As an initial matter, the ALJ was not obligated to discuss every document in the record. *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994). Secondly, the treatment records show that Plaintiff's pain level fluctuated, but was often well-controlled with medication and injections. Doc. 7 at 391 (pain level 5/10 and pain medication works well); Doc. 7 -1 at 519 (pain medication "good" and deemed adequate); Doc. 7-1 at 545 (pain medication works well and pain improved with use of TENS unit and RF ablation); Doc. 7-1 at 703 (pain medication "good" and deemed adequate); Doc. 7-1 at 1023 (pain is "well-controlled with medication"). Plaintiff, thus, cannot show that she is so functionally impaired by her pain and restricted movement that she cannot maintain substantial gainful work. *Hames*, 707 F.2d at 165 (stating that "the test for disability under the [Act] is not satisfied merely because Plaintiff cannot work without some pain or discomfort.") (citations omitted).

### B. Whether the ALJ Reversibly Erred in Using the Incorrect Severity Standard

Plaintiff next argues that the ALJ applied the wrong legal standard in finding that her hypertension, hyperlipidemia, and anemia are not severe impairments in violation of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). Doc. 10 at 9-10. Defendant does not dispute the error, but argues that it is harmless. Doc. 12-1 at 5-6.

7

Without doubt, the ALJ applied the incorrect *Stone* standard in stating that an impairment or combination of impairments is "not severe" when "medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have *no more than a minimal effect* on an individual's ability to work . . ." Doc. 7-1 at 23 (emphasis added). The ALJ further erred in determining that "[Plaintiff's] hypertension, hyperlipidemia, and anemia are not severe impairments [because] they do not *significantly limit* her ability to perform work-related activities." Doc. 7-1 at 23 (emphasis added); *cf. Stone*, 752 F.2d at 1101 (holding that "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it *would not be expected to interfere* with the individual's ability to work, irrespective of age, education or work experience.") (alterations omitted) (emphasis added) and *James E. v. Saul*, 3:18-CV-1021-N-BK, 2019 WL 4648574, at *4 (N.D. Tex. Aug. 29, 2019) (rejecting definition of a severe impairment or combination thereof as those that one "significantly limits an individual's ability to perform basic work activities" and the definition of a non-severe impairment as one in which the evidence establishes only such a slight abnormality or combination thereof that it "would have no more than a minimal effect on an individual's ability to work") (citation omitted), *adopted by* 2019 WL 4643743 (N.D. Tex. Sept. 24, 2019) (Godbey, J.).

Nevertheless, reversal is only appropriate if Plaintiff can show prejudice, i.e., "that [s]he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996). Here, there is no evidence in the record that Plaintiff's hypertension, hyperlipidemia, and anemia are severe enough to prevent her from maintaining

8

substantial gainful employment.² Indeed, there is scant reference to the disorders in the records, and Plaintiff does not even attempt to explain how they prevent her from engaging in gainful activity. *See Hames*, 707 F.2d at 165. As such, remand is not required because Plaintiff's substantial rights were not prejudiced by the ALJ's *Stone* error. *Brock*, 84 F.3d at 728-29.

### C. Whether the ALJ Erred in Declining to Admit Post-Hearing Evidence

Plaintiff states that after the administrative hearing, she submitted three additional exhibits, which the ALJ marked for identification only and did not admit. Doc. 10 at 11. Citing internal Commissioner procedures, Plaintiff asserts that the ALJ reversibly erred in failing to explain why she would not consider the exhibits. Doc. 10 at 11. Upon review, however, it is clear that the ALJ declined to review the exhibits because Plaintiff (1) missed the deadline for submitting evidence before the hearing; and (2) did not fall within one of the exceptions to be excused from compliance. Doc. 7-1 at 20; Doc. 7-1 at 1066-1134 (marked "EXPUNGED — ALJ deny late filing of MER submitted post hearing not adhering to 5 day rule").

## IV. CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 10, be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 12, be

---

² Hyperlipidemia is the elevation of plasma cholesterol and usually causes no symptoms. https://www.merckmanuals.com/professional/endocrine-and-metabolic-disorders/lipid-disorders/dyslipidemia (last visited Aug. 20, 2020).

**GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**SIGNED** August 20, 2020.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).